FILED
U S DISTRICT COURT
NEW ALBANY DIVISION

12 APR -3 PM 2: 33

SOUTHERN DISTRICT
OF INDIANA
LAURA A. BRIGGS
CLERK

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
New Albany Division

DAVID VEST
514 East 16th Street
Bedford, IN 47421

       Plaintiff

v.

LAYLA AL-SHAMI
405 Mount Holly Rd
Fairdale, KY – 40118

       Defendant

Claim No.:

**4 : 1 2 -cv- 0 3 9 SEB -TAB**

ADVANCED CORRECTIONAL HEALTHCARE, INC.
3922 W. Baring Trace
Peoria, IL 61615-2500

       Defendant

## COMPLAINT AND REQUEST FOR TRIAL BY JURY

Now into Court comes Plaintiff, David Vest, through undersigned counsel and files this

Complaint and Request for Trial by Jury against the Defendants, and alleges as follows:

### I.    NATURE OF THE ACTION

Mr. Vest brings this action in order to recover damages based upon:

a. Deprivation of rights protected under 42 U.S.C. § 1983, specifically violations of Mr. Vest's rights guaranteed under the Eighth Amendment extended and guaranteed to him under the Fourteenth Amendment, and supplemental State tort claims.

b. Mr. Vest seeks damages, declaratory judgment, costs and attorney's fees associated with bringing this suit, as well as punitive damages, incurred as a proximate result of the Defendants' actions.

### II.    JURISDICTION AND VENUE

1

1. This suit is brought and jurisdiction lies pursuant to 28 U.S.C. §1331, 1343 and 2201. This suit is a legal action for damages pursuant to 42 U.S.C. §1983 and supplemental State tort claims.

2. This Court has jurisdiction over the Supplemental State claims set out herein pursuant to 28 U.S.C. §1367.

3. All Defendants reside, may be found, or transact business within the Southern District of Indiana. All relevant acts took place within the Southern District of Indiana.

4. This Court has personal jurisdiction over the Defendants whose primary places of business are in Jefferson County, Indiana.

5. Venue is appropriate in this Court because of the proximity of this Court to Jefferson County, Indiana.

### III.    PARTIES

6. Plaintiff, Davit Vest ("Mr. Vest") is a person of the full age of majority and at all times relevant was incarcerated in Jefferson County, Indiana. Mr. Vest is presently a resident of Lawrence County, Indiana.

7. Defendant, Layla Al-Shami, ARNP, ("Defendant Al-Shami") is a resident of Fairdale, Kentucky and at all times relevant practiced as a nurse in the Jefferson County Jail in the City of Madison, Jefferson County, Indiana.

8. Defendant, Advanced Correctional Healthcare, Inc. ("Defendant ACH") is an Illinois corporation authorized and doing business in Indiana, and particularly providing medical staffing and services at the Jefferson County Jail in the City of Madison, Jefferson County, Indiana.

## IV.   <u>FACTS</u>

9.   Mr. Vest was arrested Thursday, April 30, 2009.

10.   When he was processed into the jail, Mr. Vest made jail personnel aware that before his arrest he had some minor numbness in his thumbs and great toes.

11.   After being beaten in jail Mr. Vest started to experience greater numbness in his hands and feet.

12.   Mr. Vest was seen by the jail doctor, a Defendant ACH employee, who diagnosed him with corporal tunnel and prescribed Tylenol for two weeks.

13.   The Tylenol course of treatment resulted in no improvement of his condition.

14.   Mr. Vest's next medical event was in or about August 2009 when he thought he was having sciatica.

15.   The medical staff treated his condition with Ibuprofen which provided no relief.

16.   In December 2009 the third and fourth fingers on Mr. Vest's left hand started to contract, he began to drag his left foot, and have leg spasms.

17.   Mr. Vest thought he was having a stroke.

18.   Mr. Vest went to the nurse practitioner, Defendant Al-Shami, who diagnosed him with arthritis and prescribed Tylenol.

19.   Mr. Vest was a nurse for twenty years and disagreed with her diagnosis.

20.   Despite the persistent symptoms, Defendant Al-Shami would not refer Mr. Vest to the jail doctor or an outside doctor or the hospital for further testing and diagnosis.

21.   On twenty-three (23) separate occasions Mr. Vest returned to the nurse for help but receive none.

22.   During the day inmates are locked out of their cells and not allowed to sleep in their

bunks.

23. One evening in or about mid-February 2010 Mr. Vest woke from sleeping on the floor, he had lost strength in his right side and could not stand up.

24. A guard had two inmates lift Mr. Vest off the floor.

25. Mr. Vest was allowed to go back to his bunk, but he could only move a few inches at a time holding on to the wall.

26. The guards called 911 and EMS was dispatched.

27. EMS took Mr. Vest's blood pressure which registered at a stroke level 140/120.

28. The guards called the jail's doctor, an employee of Defendant ACH, who refused to allow EMS take Mr. Vest to the hospital.

29. The doctor ordered blood pressure medication and ordered Mr. Vest moved to a holding cell for observation.

30. For several days after the episode Defendant ACH's medical personnel never followed-up on Mr. Vest's blood pressure.

31. Despite his continued belief that he had a stroke, Defendant ACH's medical personnel would not allow Mr. Vest to go the hospital for examination.

32. Mr. Vest developed a very strong body odor and become very constipated and smelled of bowel.

33. Jail personnel put Mr. Vest in a cell where he could lay on a bunk and use the top bunk to help him stand.

34. Mr. Vest continued to require the assistance of other inmates to help him stand and get to the toilet.

35. Defendant Al-Shami did not understand why the large doses of Neurontin she prescribed

were not effective.

36. Defendant Al-Shami tried high doses of steroids which also had no positive effect.

37. The high doses of steroids caused Mr. Vest to develop cataracts in both eyes.

38. On or about August 12, 2010 Mr. Vest underwent surgery on his left eye and underwent surgery on the right eye in or about August 2011.

39. Defendant Al-Shami stated she had significant experience in neurological disorders and believed Mr. Vest was faking his complaints because his symptoms did not make since to her.

40. Defendant Al-Shami would not send Mr. Vest to the hospital for diagnosis and treatment.

41. On information and belief Defendant Al-Shami had Mr. Vest placed in a cell by himself which took away the help he received from other inmates who assisted him to stand and move around.

42. The cell in which Mr. Vest was placed did not have a top bunk that he could use to help sit-up.

43. In or about March, 2010, Mr. Vest's health was continuing to decline and he began to frequently fall.

44. In response to his expressed concerns of the feeling of electrical jolts down his Defendant Al-Shami told him it did not matter what happen, she was not going to send him to a hospital.

45. When the Madison courthouse burned down Mr. Vest's case was postponed an additional six months.

46. In or about March 2010, a second bond reduction request was denied.

47. After the denial of the second bond reduction request prosecutors made Mr. Vest a plea

offer.

48. Mr. Vest signed the agreement under duress and with the hope that he would be transferred and could receive medical treatment.

49. Between May 3, 2009 and April 14, 2010, Mr. Vest was seen by Defendant Al Shami on twenty-three (23) separate occasions.

50. At no time during any of the twenty-three (23) visits did Defendant Al Shami refer Mr. Vest to a physician or hospital for further testing, evaluation and/or treatment.

51. Defendant Al Shami refused to refer Mr. Vest to a physician for further testing, evaluation and/or treatment.

52. Mr. Vest spent almost one year in jail.

53. On or about the afternoon of Friday April 16, 2010 Mr. Vest was transferred to the Department of Corrections in Plainfield, IN.

54. On or about Monday, April 19, 2010, medical exams diagnosed Mr. Vest with spinal stenosis.

55. The spinal stenosis causes urine retention leading to urinary tract infections and decreased bowel mobility which results in bowel impaction.

56. The UTI has a profound effect on Mr. Vest's mental ability.

57. At the time he signed the plea agreement in April 2010 Mr. Vest had a sever UTI.

58. While incarcerated Mr. Vest had minimal contact with the outside world because his hands were too weak to write and he could not stand to use the phone.

59. During transfer for an MRI Mr. Vest felt an electrical jolt down his spine and lost the use of his hands and legs leaving him a quadriplegic.

60. Plainfield sent Mr. Vest to Wishard Hospital in Indianapolis where they operated on his

spinal stenosis.

61. Examination showed that Mr. Vest's spine was almost pinched in two.

62. One of the neurosurgeons told Mr. Vest post-op that he was not optimistic as to his recovery.

63. The doctor believed that the delay in diagnosis and treatment was the direct cause of the severity of Mr. Vest's condition and prognosis for his recovery.

64. The delay in receiving treatment caused irreparable damaged the nerves.

65. Mr. Vest was sent back to the DOC for two weeks, until his sentence was completed, where he stayed at DOC's version of a medical facility.

66. Because of Mr. Vest's lack of insurance, DOC was unsuccessful placing him.

67. DOC took Mr. Vest to the Kings Daughters Hospital ER.

68. Kings Daughters helped Mr. Vest apply for Medicaid and found him placement at Core, the nursing home where he is currently living.

## V.   CAUSES OF ACTION

### Causes of Action I and II
### Violations of 42 U.S.C. §1983

Mr. Vest re-asserts, re-alleges, and incorporates by reference the statements contained in paragraphs 1 through 68  this Complaint, as if those statements were fully articulated within this cause of action.

69. Pursuant to 42 U.S.C. §1983, persons deprived of federal constitutional rights may bring a private action for damages against individual officers and units of local government.

70. In order to prove a claim under 42 U.S.C. §1983, a plaintiff must demonstrate that (1) the defendant deprived him of a right secured by the Constitution or any law of the United States, and (2) the deprivation of that right resulted from the defendant acting under

color of law.

71. A prisoner must meet a two-part test to prove a constitutional deprivation of medical care: (1) that his medical needs were "objectively, sufficiently serious," and (2) that a government official was deliberately indifferent to those needs.

## Cause of Action I as to Defendant ACH

72. At all times relevant, Defendant ACH was contracted to provide medical services at the Jefferson County Jail which qualified it as a quasi-government entity for the purpose of determining it was capable of violating Mr. Vest's rights protected under 42 U.S.C. §1983.

73. Defendant ACH violated Mr. Vest's Eighth Amendment Rights to be free from cruel and unusual punishment by failing to properly train and/or have proper policies in place for the direction of its employees in their duties, by being grossly deficient in it staffing, its equipment, or its procedures that Mr. Vest was effectively denied access to adequate medical care.

74. Defendant ACH violated Mr. Vest's Eighth Rights by its deliberate indifference to Mr. Vest's sufficiently serious medical need by its failure and refusal to properly train and/or have proper policies in place for the direction of its employees in their duties, by being grossly deficient in it staffing, its equipment, or its procedures causing Mr. Vest to unreasonably and needlessly suffer.

## Cause of Action II as to Defendant Al-Shami

75. Defendant Al-Shami's status as an employee of Defendant ACH, working at the jail, qualified her as a quasi-government employee for the purpose of determining that she was acting under color of law and capable of violating Mr. Vest's rights protected under

42 U.S.C. §1983.

76. Defendant Al-Shami violated Mr. Vest's Eighth Rights by her deliberate indifference to Mr. Vest's sufficiently serious medical need by her refusal to provide reasonable, appropriate and timely medical services causing him to unreasonably and needlessly suffer.

### Cause of Action III and IV
### Medical Malpractice

Mr. Vests re-asserts, re-alleges, and incorporates by reference the statements contained in paragraphs 1 through 76 of this complaint, as if those statements were fully articulated within this cause of action.

77. To prevail in a claim for medical malpractice a plaintiff must prove (1) a medical provider owed a duty to the plaintiff; (2) the provider breached that duty; and (3) the breach proximately caused the plaintiff's injuries.

78. One who undertakes, gratuitously or for consideration, to render services which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if his failure to exercise such care increases the risk of such harm.

### Cause of Action III as to Defendant ACH

79. At all times relevant, Defendant ACH was contracted by the Jefferson County Jail to provide medical services at that facility.

80. Defendant ACH owed a duty to Mr. Vest to staff the facility with competent medical personnel with the ordinary skill and knowledge to provide medical services.

81. Between May 3, 2009 and April 14, 2010, Mr. Vest sought medical services on twenty-three (23) separate occasions from Defendant ACH.

82. The medical care and treatment provided to Mr. Vest was negligent and below the appropriate standard of care.

**Defendant Al-Shami**

83. At all times relevant, Defendant Al-Shami was employed by Defendant ACH as a nurse to work in the Jefferson County Jail.

84. By virtue of her position at the Jefferson County Jail Defendant Al-Shami and Mr. Vest's position as a detainee at that facility, she owed a duty to Mr. Vest to exercise ordinary skill and knowledge in providing medical services.

85. Between May 3, 2009 and April 14, 2010, Defendant Al Shami saw Mr. Vest for medical services on twenty-three (23) separate occasions.

86. The medical care and treatment rendered by Defendant Al Shami was negligent and below the appropriate standard of care.

87. Defendant Al-Shami failed to exercise the ordinary skill and knowledge of a nurse in identifying and diagnosing symptoms, providing appropriate and timely care and, as necessary, referral to a physician when she was incapable of determining the cause of Mr. Vest's complaints.

88. As a proximate result of Defendant Al-Shami negligence, Mr. Vest incurred medical expenses, additional treatment, related expenses and/or intangible damages of a nature as to require compensation.

89. Defendant Al-Shami is liable to Mr. Vest for her malpractice in negligently failing to refer him to a doctor or hospital for further evaluation and treatment after continued and multiple complaints regarding his condition.

**Cause of Action III**
**Negligence by Advanced Correctional Healthcare**

Mr. Vests re-asserts, re-alleges, and incorporates by reference the statements contained in paragraphs 1 through 89 of this complaint, as if those statements were fully articulated within the body of this claim.

90. Employers are responsible for the actions of their employees performed within the course and scope of their employment.

91. At all times relevant Defendant Al-Shami was employed by Defendant ACH.

92. Defendant ACH is liable to Mr. Vest for the malpractice and negligence of Defendant Al-Shami for her failure and/or refusal to properly diagnose and treat his medical condition.

93. Defendant ACH is liable to Mr. Vest for the negligence of Defendant Al-Shami for her failure and/or refusal to allow Mr. Vest to be seen by a physician or to send him out for further testing, evaluation and treatment.

94. Defendant ACH is liable for its failure to implement and/or enforce policies and procedures regarding the referral of patients to outside physicians when their staff is incapable of diagnosing and treating unknown and persistent symptoms of inmate patients.

95. Defendant ACF is liable to Mr. Vest for its failure to properly monitor and supervise its employees.

**Cause of Action V**
**Declaratory Relief**

11

Mr. Vests re-asserts, re-alleges, and incorporates by reference the statements contained in paragraphs 1 through 95 of this complaint, as if those statements were fully articulated within this cause of action.

96.  A court may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

97.  Mr. Vest seeks the court to declare that Defendant Al-Shami acted with deliberate indifference and violated his Eight Amendment right to be free from cruel and unusual punishment as extended to him by the Fourteenth Amendment, all as protected by 42 U.S.C. §1983, by her refusal to provide reasonable, appropriate and timely medical services causing him to unreasonably and needlessly suffer.

98. Mr. Vest seeks the court to declare that Defendant Al-Shami committed medical malpractice when she failed to provide reasonable, appropriate and timely medical services causing him to unreasonably and needlessly suffer.

99.  Mr. Vest seeks the court to declare that Defendant Al-Shami committed medical malpractice when she undertook to render services which she should have recognize as necessary for the protection of Vest's person, and that she failed to exercise reasonable care to perform her undertaking, and her failure resulted in increased risk of harm to Mr. Vest.

100.      Mr. Vest seeks the court to declare that Defendant ACH was negligent in failing to promulgate, implement and/or enforce policies and procedures by which its employees would refer to other employee physicians, outside physicians and/or hospitals patient's whose condition they were unable to diagnose and treat.

**GENERAL CAUSATION AND DAMAGES**

101.     As a direct and proximate result of the foregoing Causes of Action, Mr. Vest has

suffered and continues to suffer irreparable injuries relating to losses of income, property,

and wealth; injury to character and reputation; and injury to physical and emotional

health and general well-being.

102.     As a direct and proximate result of the foregoing counts, Mr. Vest has suffered

damages as stated herein and in an amount to be proven at trial, plus an appropriate

amount for his emotional pain and suffering, and punitive damages to be determined.

## VI.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff, David Vest, prays this Court grant relief against the named

Defendants under his claims as asserted above in the following manner including but not limited

to:

a.   An award of full, fair and adequate compensation for all injuries, damages and
     losses sustained and for costs herein laid out and expended;

b.   An award of punitive damages in an amount sufficient to deter Defendants from
     the conduct complained of herein;

c.   An award of reasonable attorney's fees incurred as a result of this litigation;

d.   Pre and Post Judgment interest, and

e.   For all other necessary and proper relief in the premises.

## VII.    DEMAND FOR JURY

Comes now Plaintiff, David Vest, by and through the undersigned counsel, and

respectfully requests a trial by jury as to all claims asserted herein.

Respectfully Submitted,

Dated:  April 3, 2012

J. Clayton Culotta, #26733-11

13

815 E. Market Street
New Albany, IN 47150
Telephone No. (812) 941-8886
Facsimile No. (812) 941-8883
clayculotta@culottalaw.com